UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80295-CIV-MIDDLEBROOKS/JOHNSON

EMARKETERSAMERICA.ORG, INC.,

A Florida not-for-profit corporation,


                Plaintiff,

v.                                                              


SPEWS.ORG d/b/a THE HERMES GROUP;

SPAMHAUS.ORG d/b/a THE SPAMHAUS PROJECT;

CSL GMBH JOKER.COM;

STEVE LINFORD;

JULIAN LINFORD;

ALAN MURPHY;

SUSAN WILSON a/k/a SUSAN GUNN a/k/a SHIKSAA;

STEVEN J. SOBOL;

CLIFTON T. SHARP;

RICHARD C. TIETJENS a/k/a MORLEY DOTES;

ADAM BROWER; and

STEPHEN JOSEPH JARED a/k/a JOE JARED,


                Defendants.

_____/



## DEFENDANTS' REQUEST FOR ORDER GRANTING BY DEFAULT, OR IN THE ALTERNATIVE, DISMISSING THE CASE PURSUANT TO RULE 41(A)(2) AND DEFENDANTS' DEMAND FOR ATTORNEY FEES

Defendants Spamhaus.org, Steve Linford, Alan Murphy, Susan Gunn, Steven J. Sobol, Clifton T. Sharp, Richard C. Tietjens, Adam Brower, and Stephen Joseph Jared (collectively the "Defendants") hereby show that Plaintiff EmarketersAmerica.org ("EMA") failed and refused to respond to the Defendants' September 2, 2003 <u>Motion To Dismiss For Lack Of Standing, Lack Of Subject Matter Jurisdiction, Lack Of Personal Jurisdiction And Failure To State A Claim Upon Which Relief May Be Granted</u> (the "Motion To Dismiss"). EMA should, accordingly, be estopped by Local Rule 7.1.C from opposing that motion (including the prayer for costs and attorney fees included therein). Alternatively, this Court should accept Plaintiffs' unilateral Notice of Voluntary Dismissal with Prejudice under Rule 41(a)(2) with the condition that Plaintiffs pay Defendants reasonable costs and fees. The nine Defendants further show that they are also entitled to recover their costs and attorney fees from EMA and its attorney/founder/director/spokesperson Mark Felstein ("Felstein") pursuant to:

> (1)    Federal Rule of Civil Procedure 41(a)(2),[1] in relation to EMA's impermissible unilateral filing of its September 3, 2003 "Notice of Voluntary Dismissal With Prejudice" and its similarly-impermissible attempt to withdraw that dismissal on or about September 17, 2003 (<u>See</u> Exhibit A.4, Withdrawal); and/or
>
> (2)    28 U.S.C. § 1927, in relation to Felstein's unreasonable and vexatious conduct and the resulting multiplication of the proceedings herein; and/or
>
> (3)    this Court's May 28, 2003 Pretrial Scheduling Order (the "Scheduling Order"), in relation to EMA/Felstein's refusal to comply with the mediation-related requirements thereof.

In support of the relief prayed for herein, the Defendants show as follows:

## FACTS

### I. EMA/FELSTEIN'S FRIVOLOUS COMPLAINT

EMA/Felstein filed the instant lawsuit on or about April 14, 2003. As was detailed in the Defendants' Motion To Dismiss, EMA/Felstein's rambling, incoherent Complaint left no doubt that EMA/Felstein failed to undertake even the most cursory factual or legal pre-filing

---

[1]    All references hereinafter to a "Rule" (<u>e.g.</u>, "Rule 41(a)(2)") refer to the Federal Rules of Civil Procedure.

investigation. The fatal defects inherent in the EMA/Felstein Complaint included EMA's lack of standing, this Court's lack of subject matter jurisdiction over EMA/Felstein's claims, this Court's lack of personal jurisdiction over the Defendants, and EMA/Felstein's failure to state even a *single* claim recognized by Florida law. *(See Motion To Dismiss)*. Nonetheless, via press releases, web site postings, the service of process upon certain Defendants in front of hundreds of spectators at a spam-related FTC conference in Washington D.C., myriad media interviews, and other such measures, EMA/Felstein sought the maximum possible publicity for the lawsuit, thereby revealing its true purpose – to deter the Defendants and other like-minded people from participating in the battle against the illegal sending of unsolicited commercial e-mails ("spamming"). *(See id. at pp. 1-3 and Exhibits A.2-5, 7)*.

## II. EMA/FELSTEIN'S DISREGARD OF DEFENDANTS' DEMAND FOR DISMISSAL

Over the first few days of May 2003, the nine Defendants retained attorney Paul F. Wellborn III ("Wellborn") to represent them in the instant lawsuit. On Monday, May 5, 2003,

* **before** commencing upon a full-blown factual investigation of EMA/Felstein's claims against each of the **nine** Defendants;

* **before** commencing the painstaking process of trying to decipher the EMA/Felstein Complaint, which was so self-contradictory and rambling as to render it almost indecipherable;

* **before** preparing, finalizing, and filing the required Answer on behalf of the nine Defendants;

* **before** embarking upon exhaustive legal research on behalf of the nine Defendants regarding associational standing, subject matter jurisdiction, federal due process concerns, the Florida Long-Arm Statute, the Florida law of conversion, the Florida law of privacy, the Florida law of defamation-related torts, the Florida law of tortious interference, and other pertinent legal issues;

* **before** preparing, finalizing, and serving twenty-seven sets of discovery (unique interrogatories, requests for production, and requests for admissions on behalf of each of the nine Defendants);

* **before** commencing work on the comprehensive Motion to Dismiss and supporting brief (in relation to which Rule 12 required that the Defendants <u>assert or lose</u> each and every possible affirmative defenses); and, indeed,

* **before** the "legal fees" meter had even commenced running in relation to his efforts on behalf of the Defendants,

3

Wellborn contacted Felstein by telephone to demand that the suit be dismissed. During this May 5, 2003 telephone conference, Wellborn explained to Felstein that the EMA/Felstein lawsuit suffered from a number of fatal defects, including an incurable lack of standing and an inarguable lack of personal jurisdiction over the Defendants. *(Motion To Dismiss at Exhibit A.8, Wellborn's May 6, 2003 Letter to Felstein)*. Wellborn expressly offered to waive the Defendants' claims for costs and attorney fees if and only if EMA/Felstein dismissed immediately (i.e., before the Defendants incurred the substantial expenses associated with various work items set forth above). Felstein, however, refused to dismiss and refused even to disclose the identifies of the entities that the Defendants had allegedly harmed (i.e., the anonymous EMA members).[2] *(Id.)*. By letter to Felstein of Tuesday, May 6, 2003, Wellborn memorialized the substance of that telephone conference and reiterated the Defendants' demand for dismissal. Felstein failed to reply to that letter and instead continued to maintain and prosecute the lawsuit. *(Id.)*.

## III.   DEFENDANTS' DEFENSE OF THE LAWSUIT

In the wake of Felstein's refusal to dismiss the bogus EMA/Felstein Complaint, the nine Defendants were forced to proceed with their defense of the lawsuit. Because of the unique and, for the most part, non-overlapping nature of the Defendants' respective anti-spam activities, separate fact investigations were required in relation to each Defendant. Still more fact investigation was required in relation to EMA, Felstein, and the possible membership roster of EMA, as Counsel for the Defendants struggled to determine "who is EMA?," "what are the Defendants actually accused of?," and "who did they supposedly harm?" Even the preparation of the Defendants' Answer was a time-consuming ordeal, in light of EMA/Felstein's incoherent, self-contradictory Complaint. *(See Motion To Dismiss at Facts, Section II)*.

Once the Answer was filed, Defendants' Counsel turned their attention to the dual tasks of preparing the Defendants' discovery and preparing the Motion To Dismiss. In relation to the former task, twenty-seven unique sets of discovery were required (i.e., interrogatories, requests for production of documents, and requests for admissions from each of the nine Defendants). In relation to the Motion To Dismiss, Rule 12's "assert or waive" provision required that the

---

[2] Defendants have served interrogatories and requests for production seeking the identities of the Plaintiffs' members. Plaintiffs, however, have not yet responsed to the pending discovery.

Defendants' initial motion include each and every possible affirmative defense.  The
EMA/Felstein lawsuit proved to be a comedy of errors that gave rise to a plethora of legal
defenses, including:

* the lack of standing arising from EMA/Felstein's failure to show that any
  EMA member could sue in its own capacity;

* the lack of standing arising from EMA/Felstein's failure to show that the
  interests allegedly protected via the lawsuit were germane to EMA's purpose;

* the lack of standing arising from the fact that EMA/Felstein's claims required
  the participation in the lawsuit of each allegedly-injured EMA member;

* the lack of standing arising from the failure of EMA/Felstein to identify the
  relevant EMA members;

* the lack of standing arising from the impermissibility of the monetary relief
  sought by Felstein/EMA;

* the lack of standing arising from the impermissibility of the injunctive relief
  sought by Felstein/EMA;

* the lack of subject-matter jurisdiction arising from EMA/Felstein's
  impermissible aggregation of the claims of multiple injured parties against
  multiple defendants for amount-in-controversy/diversity purposes;

* the lack of personal jurisdiction over the Defendants under the Florida long-
  arm statute;

* the lack of personal jurisdiction over the Defendants under federal due process
  concerns;

* the Complaint's failure to state a legally-cognizable claim for conversion;

* the Complaint's failure to state a legally-cognizable claim for invasion of
  privacy;

* the Complaint's failure to state a legally-cognizable claim for false light
  statements;

* the Complaint's failure to state a legally-cognizable claim for tortious
  interference; and

* the Complaint's failure to state a legally-cognizable claim for defamation.

In short, the magnitude of the effort required of the Defendants' Counsel in relation to the
Motion To Dismiss resulted from a <u>single factor</u> – the incredible number of defects inherent in
EMA/Felstein's lawsuit.  In marked contrast to Defendants extensive efforts in this case,
Plaintiffs/Felstein have made no good faith effort to prosecute the case they filed -- plaintiffs
have ignored their obligation to file a response to the motion to dismiss.

## IV.   FELSTEIN'S REFUSAL TO PARTICIPATE IN COURT-ORDERED MEDIATION

In its Scheduling Order, the Court ordered the parties to mediate the dispute giving rise to EMA/Felstein's Complaint. *(Scheduling Order at ¶ 8).*  The Court set forth a number of mediation-related deadlines (including selection of the mediator by June 12, 2003) and assigned primary responsibility for coordinating the mediation to Felstein. *(Id.).*  Felstein, however, refused to comply with the Scheduling Order and simply ignored his duties thereunder.  By fax of June 12, 2003, Defendants' Counsel Sam Danon reminded Felstein of his mediation-related obligations and, having received no mediation-related communications from Felstein, proposed that Daniel Pearson serve as the mediator. *(Exhibit A.2, Danon's June 12, 2003 Letter to Felstein).*  Felstein failed and refused to respond to that letter, failed and refused to contact the Defendants' Counsel regarding the mediation, and, amazingly, simply ignored the Court's Scheduling Order. *(Exhibit A, Wellborn Dec. at ¶ 3).*

## V.   EMA/FELSTEIN'S IMPERMISSIBLE VOLUNTARY DISMISSAL

On September 3, 2003, without seeking leave of court and without obtaining the Defendants' consent, EMA/Felstein filed a "Notice of Voluntary Dismissal With Prejudice" of the lawsuit (the "Notice").  As is discussed below at Argument, Section II.A.1, EMA/Felstein's unilateral right to voluntarily dismiss the lawsuit pursuant to Rule 41 expired in May 2003 with the filing of the Defendants' Answer.  After filing his impermissible (and thus null) Notice, Felstein twice contacted Wellborn to discuss the attempted dismissal. *(Exhibit A, Wellborn Dec. at ¶ 2 and at Exhibit A.1, Wellborn's September 15, 2003 Letter to Felstein).*  During a Thursday, September 4, 2003 telephone conference, Wellborn agreed to accept the dismissal only if EMA and/or Felstein paid the Defendants' costs and attorney fees. *(Id.).*  Felstein refused. *(Id.).*  During a Thursday, September 11, 2003 telephone conference, Wellborn further informed Felstein that the invalid Notice in no way stayed, delayed, or obviated EMA/Felstein's duty to respond in a timely and proper manner to the Defendants' Motion To Dismiss and to their outstanding discovery. *(Id.).*  Rather than comply with its obligations under the Rules of Civil Procedure, by fax of 10:50 p.m. on September 16, 2003, EMA/Felstein gave notice of its intent to file what it styled – a "Withdrawal Of Voluntary Dismissal With Prejudice." *(Exhibit A.4).*  Of course, by the time of the withdrawal, Defendants' counsel had almost completed this

response to the Notice and was forced, yet again, to expend more time to re-draft this paper to conform with EMA/Felstein's tactics.

## VI.   EMA/FELSTEIN'S FAILURE TO RESPOND TO THE DEFENDANTS' MOTION TO DISMISS

The Defendants filed their Motion To Dismiss on September 2, 2003 and served it by hand on EMA/Felstein on that same date. *(See Motion To Dismiss at Certificate of Service)*. Pursuant to Local Rule 7.1.C, EMA/Felstein's response was due to be filed and served on or before September 16, 2003. Based upon Felstein's repeated representations that he refused to respond to the Motion To Dismiss, upon the Defendants' receipt on September 16, 2003 of the Withdrawal (but no response brief), and upon the docket of this matter as shown by PACER as of September 18, 2003 (which did not reflect the filing of any response brief by EMA/Felstein), it appears that EMA/Felstein failed to respond in any manner to the Motion To Dismiss.

## VII.   THE DEFENDANTS' COSTS AND ATTORNEY FEES

As of September 16, 2003, the nine Defendants had incurred costs and attorney fees of $7,810.35 per defendant in relation to their defense of this lawsuit. *(See Exhibit A.3, Summary of Defendants' Attorney Fees through September 16, 2003)*. As noted above, these costs and attorney fees were incurred in their entirety **_after_** Felstein ignored Wellborn's May 5, 2003 explanation of the fatal defects inherent in the EMA/Felstein Complaint and demand for dismissal.

## ARGUMENT

## I.   EMA/FELSTEIN FAILED TO RESPOND TO THE DEFENDANTS' MOTION TO DISMISS AND ARE NOW ESTOPPED FROM OPPOSING THE RELIEF PRAYED FOR THEREIN.

Local Rule 7.1.C provides in pertinent part that:

> [e]ach party opposing a motion shall serve an opposing memorandum of law not later than ten days after service of the motion as computed in the Federal Rules of Civil Procedure. Failure to do so may be deemed sufficient cause for granting the motion by default.

See also Manriquez v. Manuel Diaz Farms, Inc., 2002 WL 1050331, *1 at fn. 2 (S.D. Fla. 2002) (explaining that, pursuant to Local Rule 7.1.C, "[t]he Court has discretion to grant [a movant's motion] by default because of [the opposing parties] failure to file written responses"); Lopez v.

Ingram Micro, Inc., 1997 WL 605780 (S.D. Fla. 1997) (granting motion by default pursuant to Local Rule 7.1.C). In the present matter, Felstein has failed and refused to respond to the Defendants' September 2, 2003 Motion To Dismiss, not by oversight or negligence, but instead in intentional defiance of his obligations under the Federal Rules of Civil Procedure and the Local Rules. During the two weeks following the filing of the Defendants' Motion To Dismiss, Wellborn repeatedly reminded Felstein that the due date for EMA's response brief was approaching. *(See Exhibit A.1, Wellborn's September 15, 2003 Letter to Felstein and conversations memorialized therein).* During both their September 4, 2003 conversation and their September 11, 2003 conversation, Felstein told Wellborn that he refused to file a response brief and that he, in fact, had not even read the Motion To Dismiss. *(Id.).* On the basis of EMA/Felstein's failure (refusal) to respond, and especially in light of the flagrant and intentional nature of that failure/refusal, the Defendants' Motion To Dismiss should be granted in its entirety. Moreover, insofar as that Motion included a specific prayer for the award of the Defendants' costs and attorney fees (which EMA/Felstein is now estopped from opposing), the grant of that motion by the Court should accordingly include the requirement that EMA and Felstein to pay the Defendants' costs and attorney fees. *(See Motion To Dismiss at Conclusion (specifically praying for the award of the Defendants' costs and attorney fees)).*

## II.   FELSTEIN AND EMA ARE LIABLE FOR THE DEFENDANTS' COSTS AND ATTORNEY FEES.

### A.   This Court Should Order Felstein To Pay The Defendants' Costs And Attorney Fees Pursuant To Rule 41(A).

#### 1.   EMA/Felstein's "Notice Of Voluntary Dismissal" Is A Nullity.

Rule 41 allows the unilateral voluntary dismissal of a plaintiff's claims only if the defendant has not yet filed an initial responsive pleading. F.R.C.P. 41(a). Once the responsive pleading is filed, the plaintiff's right to dismiss unilaterally is extinguished, and a voluntary dismissal may occur only by stipulation of the parties or by order of the court. Rule 41(a); D'Alto v. Dahon California, Inc., 100 F.3d 281 (2d Cir. 1996). A unilaterally-filed, post-answer "notice of dismissal" is therefore a nullity and is wholly without legal effect. Fallin v. Baltimore County, 194 F.3d 1304 (4th Cir. 1999) (affirming the trial court's refusal to permit a voluntary dismissal via "notice" after the answer was filed). Accordingly, in the present matter, EMA/Felstein's right to dismiss without either the consent of the Defendants or leave of this

8

Court expired on May 12, 2003 with the filing of the Defendants' Answer.  EMA/Felstein's September 3, 2003 Notice had no legal effect whatsoever, and the September 16, 2003 Withdrawal is likewise a nullity.

       **2.**   **<u>Rule 41 Empowers The Court To Modify An Attempted Unilateral Dismissal To Include Terms That The Court Deems Proper.</u>**

Notwithstanding the impermissible nature of EMA/Felstein's unilateral filing of the Notice and the attempted unilateral withdrawal of that Notice two weeks later, EMA/Felstein's improper filings have vested this Court with authority under Rule 41(a) to order that EMA and Felstein pay the Defendants' costs and attorney fees. Rule 41(a)(2) states that "an action shall not be dismissed at plaintiff's instance save upon order of the court <u>and upon such terms and conditions as the court deems proper.</u>" (emphasis added).  This broad grant of judicial authority "prevent[s] voluntary dismissals which unfairly affect the other side, and . . . permit[s] the imposition of curative conditions [by the Court]." <u>Clark v. Tansy</u>, 13 F.3d 1407, 1411 (10th Cir. 1993) (quoting 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2364 at 165 (1971)).  The supplemental "terms and conditions" that a Court may impose under Rule 41(a)(2) include the requirement that the dismissing plaintiff pay the costs and attorney fees of the defendants. <u>Yoffe v. Keller Industries, Inc.</u>, 580 F.2d 126, 129 n.9 (5th Cir. 1978); <u>Ortega v. Banco Central del Ecuador</u>, 205 F.R.D. 648, 649 (S.D. Fla. 2002); <u>Barnett v. Terminal R. Ass'n of St. Louis</u>, 200 F.2d 893, 894 (8th Cir. 1953).

The resolution of the present matter without the requirement that EMA/Felstein pay the Defendants' costs and attorney fees is the exact type of "unfair dismissal" that Rule 41(a) seeks to prevent.  Felstein's formation of EMA as a sham plaintiff, the frivolous nature of EMA/Felstein's Complaint, and Felstein's attempts to turn the instant litigation into a circus sideshow all reveal the actual purpose of EMA/Felstein's lawsuit – to serve as a financial deterrent to the nine Defendants and anyone else who dares to assist in the battle against spam.  To allow EMA/Felstein to file and maintain a bogus lawsuit and then hide behind a shell game of dismissals and withdrawals after forcing the Defendants to incur substantial legal fees would validate – <u>indeed, would *reward*</u> – EMA/Felstein's incompetence and bad faith.  Justice and equity demand that this Court award the Defendants their reasonable costs and attorneys fees; Rule 41(a) and EMA/Felstein's improper Notice provide one means for such award.

**B.  This Court Should Order Felstein To Pay The Defendants' Costs And Attorney Fees Pursuant To 28 U.S.C. § 1927.**

**1.  28 U.S.C. § 1927 Renders An Attorney Who "Unreasonably And Vexatiously" Multiplies Lawsuit Proceedings Liable For The Opposing Party's Attorney Fees.**

Separate and apart from EMA/Felstein's attorney fees liability under Rule 41(a), Felstein is <u>also</u> liable to the Defendants for their costs and attorney fees pursuant to 28 U.S.C. § 1927. That statute provides that:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney fees reasonably incurred because of such conduct.

The term "vexatious" is broadly construed under 28 U.S.C. § 1927 and includes various categories of misconduct, including litigation-related conduct:

* that is "without reasonable or probable cause or excuse;"

* that is "harassing [or] annoying[;]"

* that is undertaken "maliciously and without good cause[;]"

* that is "lacking justification an intended to harass[;]" and/or

* that is undertaken "for the purpose of causing trouble or annoyance to the defendant."

<u>Jerelds v. City of Orlando</u>, 194 F. Supp.2d 1305, 1314-15 (M.D. Fla. 2002); <u>see, also</u>, <u>McMahan v. Toto</u>, 256 F.3d 1120, 1128 (11th Cir. 2001).  The broad application of 28 U.S.C. § 1927 advances the ultimate goal of that statute – "**to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them.**" <u>Jerelds</u>, 194 F. Supp.2d at 1315 (emphasis added).  It is hard to imagine a case that falls more squarely within the scope of 28 U.S.C. § 1927 than the bogus EMA lawsuit filed by Felstein.

**2.  Felstein "Unreasonably And Vexatiously" And In "Bad Faith" Multiplied The Instant Proceedings.**

The touchstone in the Eleventh Circuit for a finding of "unreasonable and vexatious" conduct under 28 U.S.C. § 1927 is the "bad faith" of the complained-of attorney.  <u>Schwartz v. Millon Air, Inc.</u>, 2003 WL 21911228, *3 (11th Cir. 2003); <u>Avrigan v. Hull</u>, 932 F.2d 1572, 1582

(11th Cir. 1991). For the purposes of 28 U.S.C. § 1927, "bad faith" is a broad descriptor that exists in a variety of situations, including:

    \*    whenever an attorney "<u>knowingly or recklessly</u> pursues a frivolous claim." <u>Schwartz</u>, 2003 WL 21911228 at \*3 (emphasis added); or

    \*    whenever an attorney fails to reasonably investigate the factual basis of the claims prior to filing a complaint. See <u>Barnes v. Dalton</u>, 158 F.3d 1212, 1213-14 (11th Cir. 1998); <u>Schwartz</u>, 2003 WL 21911228 at \*4; or

    \*    whenever the primary purpose of a plaintiff's claims (even if potentially meritorious) is the harassment of the Defendants. <u>Barnes v. Dalton</u>, 158 F.3d 1212, 1214 (11th Cir. 1998).

If Felstein's conduct falls within any <u>one</u> of the above-listed categories of "bad faith," the assessment against him of the Defendants' attorney fees and costs pursuant to 28 U.S.C. § 1927 is proper. Felstein's outrageous conduct, in fact, satisfies all three categories.

###     a.    <u>Felstein Knowingly Or Recklessly Pursued A Frivolous Claim.</u>

    EMA/Felstein's Complaint reads like a bad problem on a first-year law school exam, with virtually **every** legal defect possible somehow crammed into its sixteen pages. *(See summary of those defects at Facts, Section III above and corresponding legal discussion in the Motion To Dismiss).* Felstein must necessarily have known that his lawsuit was frivolous, even before he filed it. Accordingly, the mere act of filing the Complaint, standing alone, brought Felstein's actions within the scope of 28 U.S.C. § 1927. Moreover, two specific aggravating factors rise above the facial frivolity of the Complaint and cement Felstein's liability for the Defendants' costs and attorney fees under 28 U.S.C. § 1927. First, Felstein is not only counsel for EMA, but is also EMA's lead director, founder, spokesperson, and "chief cook and bottle washer." *(See Motion To Dismiss at Facts, Section IA).* Felstein is apparently in charge of the day-to-day operations of EMA and was necessarily involved in (if not solely responsible for) the decision to form EMA and file the instant lawsuit. *(Id.)*. Second, and even more damning, Felstein ignored the Defendants' May 5, 2003 explanation of the fatal defects in the lawsuit, ignored their corresponding demand for dismissal, and ignored their representations that they would otherwise seek and recover their attorney fees from EMA and/or him.

###     b.    <u>Felstein Failed To Investigate The Factual Basis Of His Claims.</u>

    The same factors that prove EMA/Felstein's knowing pursuit of a frivolous lawsuit also demonstrate its complete failure to conduct any factual investigation before filing the lawsuit. Felstein's Complaint was filled with outlandish allegations regarding phantom contracts that

EMA allegedly had with various Internet-related companies, phantom statements about EMA that the Defendants supposedly published, and other insupportable EMA-related contentions. *(See Motion To Dismiss at Facts, Section II)*. As the Defendants explained in their Motion To Dismiss, these claims are facially incredible, given that EMA was not formed until March 2003, apparently for the sole purpose of commencing the present lawsuit a few weeks thereafter. *(Id.)*. Moreover, Felstein is, for all intents and purposes, both attorney and client in relation to EMA's claims and therefore cannot attribute his misconduct to "bad information from his client." *(Id. at Facts, Section I.A)*. Indeed, on the basis of Felstein's conscious decision to disregard the Defendants' May 5, 2003 explanation of the defects in his lawsuit, Felstein cannot even argue that his "bad faith" under 28 U.S.C. § 1927 was reckless or unintentional. Rather, with <u>full knowledge</u> that his facts were wrong and with <u>full knowledge</u> his was lawsuit baseless, Felstein nonetheless forced the Defendants to mount a defense and expend almost $8,000.00 apiece fighting a frivolous lawsuit.

        **c.**    **<u>Felstein Sought To Harass The Defendants Via His Bogus Lawsuit.</u>**

Finally, there can be no doubt that the EMA/Felstein lawsuit was undertaken for the <u>sole purpose</u> of harassing the Defendants and thereby deterring them and other spam-fighters from participating in the war against unsolicited commercial e-mail. At all times pertinent to his sham lawsuit, Felstein's paramount concern has been the public humiliation of the nine Defendants. Felstein chose to serve several of the Defendants (none of whom were avoiding service) in front of several hundred attendees at an FTC-sponsored anti-spam conference in Washington D.C. *(Id. at Introduction and at Exhibits A.3 and A.4)*. During the presentation of one Defendant who had been invited by the FTC to speak at the conference, Felstein heckled him from the audience in relation to the subject matter of the lawsuit. *(Id.)*. In an open letter posted by Felstein at the EMA web site, Felstein characterized the Defendants as "ruthless" individuals dedicated to "obliterate[ing] [the] right to free trade" of "legitimate businesses." *(Id. at Exhibit A.2)*. In his April 30, 2003 press release, Felstein accused the Defendants of acting with a "mob mentality" in attacking "legitimate companies" in the furtherance of some sinister, ulterior financial agenda. *(Id. at Exhibit A.7)*. Since filing his lawsuit, Felstein has repeated these outlandish and insupportable statements during interview after interview with newspaper, magazine, and Internet writers around the country. *(See, e.g., id. at Exhibits A.3, 4, 6, 9 and 10)*. Had Felstein's factual research efforts and legal research efforts been one-tenth as intense as his promotional

campaign for the bogus lawsuit and his corresponding verbal attacks on the Defendants, Felstein's Complaint would never have been filed in the first place.

### C.   This Court Should Order Felstein To Pay The Defendants' Costs And Attorney Fees Pursuant To The May 28, 2003 Scheduling Order.

EMA/Felstein's failure to comply, or even cooperate, with the mediation-related duties and responsibilities set forth in the Court's Scheduling Order mandate the imposition of costa and fees against EMA/Felstein. Even after the Defendants reminded EMA/Felstein in writing of his violations of the Scheduling Order and suggested a specific mediator, Felstein simply ignored the Defendants, ignored the Scheduling Order, and ignored the mediation-related deadlines. *(Exhibit A.2, Danon's June 12, 2003 Letter to Felstein; (Exhibit A, Wellborn Dec. at ¶ 3).* The Court anticipated the possibility of non-compliance and expressly warned in the Scheduling Order that violation of the terms thereof (including the mediation-related requirements) could give rise to sanctions against "parties and/or counsel[.]" *(Id. at ¶ 8(g)).*

### CONCLUSION

Mark Felstein formed EMA for the sole purpose of serving as the plaintiff in a baseless SLAPP-type lawsuit designed to deter the Defendants and other third-parties from engaging in the war on "spam," the sending of which violates numerous federal and state laws. *(See Motion To Dismiss at Argument, Section IV.B.3).* In light of the myriad fatal defects in the EMA/ Felstein Complaint, it is impossible that Felstein undertook any factual or legal investigation whatsoever before filing that Complaint. Before the Defendants had incurred <u>any</u> legal fees, Defendants' counsel, Wellborn,  explained to Felstein specific fatal defects inherent in the Complaint and offered to allow Felstein to dismiss without risk of claim by the Defendants for costs or fees. Felstein, however, refused to dismiss. *(See discussion at Facts, Section II above).* The nine Defendants were forced to undertake an exhaustive factual investigation of EMA and its claims against each of them, answer the lawsuit, prepare and propound individual discovery requests, undertake exacting legal research regarding the myriad legal defects in the EMA/Felstein Complaint, prepare and file a comprehensive motion to dismiss, prepare a response to EMA/Felstein's ineffective attempt at dismissal, modify that response after receiving the similarly-impermissible withdrawal, and otherwise defend against EMA/Felstein's bogus lawsuit. Local Rule 7.1.C, Rule 41(a), 28 U.S.C. § 1927, and this Court's May 28, 2003 Scheduling Order each provide an independent means by which the Court may direct Felstein to

pay the Defendants' reasonable costs and attorney fees.  The governing law and fundamental principles of fairness demand that this Court enter such an order.

Accordingly, the Defendants respectfully request that this Court:

(A)(1)    strike EMA/Felstein's Withdrawal Of Voluntary Dismissal With Prejudice and modify EMA/Felstein's Notice Of Voluntary Dismissal With Prejudice pursuant to Rule 42(a) to include terms and conditions requiring Felstein and EMA to pay the nine Defendants' respective costs and attorney fees in the amount of $7,810.35 per defendant (plus any fees/expenses incurred after September 16, 2003); **or**

(2)    strike EMA/Felstein's Withdrawal Of Voluntary Dismissal With Prejudice, accept EMA/Felstein's Notice Of Voluntary Dismissal as filed and, pursuant to 28 U.S.C. § 1927, order Felstein to pay the nine Defendants' respective costs and attorney fees in the amount of $7,810.35 per defendant (plus any fees/expenses incurred after September 16, 2003); **or**

(3)    strike EMA/Felstein's Withdrawal Of Voluntary Dismissal With Prejudice and EMA/Felstein's Notice Of Voluntary Dismissal With Prejudice as nullities under Rule 41(a), decide the case on the merits of the Defendants' previously-filed Motion To Dismiss (to which EMA/Felstein failed to respond), and, concurrent with the dismissal of the instant lawsuit under that motion, order Felstein to pay the nine Defendants' respective costs and attorney fees in the amount of $7,810.35 per defendant (plus any fees/expenses incurred after September 16, 2003) pursuant to: (a) the unopposed relief prayed for in the Defendants' Motion To Dismiss; and/or (b) 28 U.S.C. § 1927; and/or (c) the Court's May 28, 2003 Scheduling Order; **and**

(B)    impose such additional sanctions and award such additional relief as this Court deems just and proper, toward the goal of deterring Felstein, EMA, EMA's members, and any other similarly-situated spammers/criminals from engaging in frivolous and bad faith legal tactics such as those engaged in by Felstein herein.

Finally, to the extent that this Court does not believe the Defendants to have made the requisite showing in relation to any aspect of their various alternative prayers for costs and attorney fees, the Defendants respectfully request that this Court stay its ruling upon said aspects/prayers to

allow the Defendants to conduct thorough and sifting discovery regarding the pertinent issues. The Defendants show that they previously served interrogatories, requests for production, and requests for admissions upon Felstein/EMA, the responses to which are due later this month.

Respectfully submitted, this 19th day of September, 2003.

**HUNTON & WILLIAMS, LLP**

Samuel A. Danon
Florida Bar No. 892671

Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Phone: (305) 810-2510
Fax:    (305) 810-1610
E-mail: sdanon@hunton.com

**WELLBORN & BUTLER, LLC**

Paul F. Wellborn, III *(admitted pro hac vice)*
Georgia Bar No. 746720

1372 Peachtree St., N.E., Suite 204
Atlanta, GA 30309
Phone: (404) 815-9595
Fax:    (404) 815-9957
E-mail: pete@wellbornlaw.com

Attorneys For Defendants Spamhaus.org, Steve Linford, Alan Murphy, Susan Gunn, Steven J. Sobol, Clifton T. Sharp, Richard C. Tietjens, Adam Brower, and Stephen Joseph Jared

## CERTIFICATE OF SERVICE

This is to certify that I have this 19th day of September, 2003 served a copy of the foregoing **Defendants' Request for Order Granting by Default, or in the Alternative, Dismissing the Case Pursuant to Rule 41(A)(2) and Defendants' Demand for Attorney Fees** upon the below-listed counsel by hand at:

>Mark E. Felstein
>Felstein & Associates, P.A.
>555 South Federal Highway, Suite 450
>Boca Raton, Florida 33432

**HUNTON & WILLIAMS, LLP**

Samuel A. Danon
Florida Bar No. 892671

Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Phone: (305) 810-2510
Fax:    (305) 810-1610
E-mail: sdanon@hunton.com

63781.000002 MIAMI 173383v1

# INDEX TO EXHIBITS

A. Declaration of Paul F. Wellborn III

      1. Wellborn's September 15, 2003 Letter to Felstein

      2. Danon's June 12, 2003 Letter to Felstein

      3. Summary of Defendants' Attorney Fees

      4. EMA's September 16, 2003 "Withdrawal Of Voluntary Dismissal"

**A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80295-CIV-MIDDLEBROOKS/JOHNSON

EMARKETERSAMERICA.ORG, INC.,
A Florida not-for-profit corporation,

        Plaintiff,

v.

SPEWS.ORG d/b/a THE HERMES GROUP,
SPAMHAUS.ORG d/b/a THE SPAMHAUS PROJECT;
CSL GMBH JOKER.COM;
STEVE LINFORD,
JULIAN LINFORD;
ALAN MURPHY;
SUSAN WILSON a/k/a SUSAN GUNN a/k/a SHIKSAA;
STEVEN J. SOBOL;
CLIFTON T. SHARP;
RICHARD C. TIETJENS a/k/a MORLEY DOTES;
ADAM BROWER; and
STEPHEN JOSEPH JARED a/k/a JOE JARED,

        Defendants.

_____/

## DECLARATION OF PAUL F. WELLBORN III

PAUL F. WELLBORN III hereby declares as follows:

1.     My name is Paul F. Wellborn III. I am counsel for Defendants Attorneys for Defendants Spamhaus.org, Steve Linford, Alan Murphy, Susan Gunn, Steven J. Sobol, Clifton T. Sharp, Richard C. Tietjens, Adam Brower, and Stephen Joseph Jared (the "Defendants"). I offer this Declaration in support of the Defendants' Response To Plaintiff's Invalid "Notice Of Voluntary Dismissal With Prejudice" And Demand For Attorney Fees. I am over 18 years of age and am otherwise competent to give this Declaration regarding the matters set forth herein.

2.     The document attached hereto at Exhibit A.1 is a true and correct copy of a letter that I wrote and faxed to Mark Felstein on September 15, 2003 via the fax number listed for him

in the official record of this case. The letter was also sent to Felstein by U.S. Mail on that date. The facts and statements set forth in that letter, which are incorporated by reference herein in their entirety, are true and correct.

3.     The document attached hereto at Exhibit A.2 is a true and correct copy of a letter that my co-counsel Sam Danon of Hunton & Williams prepared and faxed to Mark Felstein on June 12, 2003. The facts and statements set forth in that letter, which are incorporated by reference herein in their entirety, are true and correct. Mr. Felstein made no mediation-related communications with the Defendants' Counsel (Mr. Danon and/or me) prior to that letter and has likewise failed and refused to respond to that letter or otherwise communicate with either of us regarding the mediation ordered by this Court.

4.     The document attached hereto at Exhibit A.3 is a true and correct summary of the costs and attorney fees incurred thus far by the Defendants in relation to the instant litigation. The figures and balances set forth in that summary are true and correct and correspond to the costs and reasonable attorney fees actually incurred by the Defendants. We will submit detailed billing statements from Wellborn & Butler and Hunton & Williams at the appropriate time.

I declare under penalty of perjury this ___18th___ day of September, 2003 that the foregoing information is true and correct.

Paul F. Wellborn III

2

1



# THE WELLBORN FIRM, LLC

**1372 Peachtree Street, N.E., Suite 204 ● Atlanta, Georgia 30309-3226**
**Phone: (404) 815-9595 ● Fax: (404) 815-9957 ● www.wellbornlaw.com**

September 15, 2003
*Via Facsimile (561) 367-7980*
*Original Via U.S. Mail*

Mark E. Felstein, Esq.
Felstein & Associates, P.A.
555 South Federal Highway, Suite 450
Boca Raton, Florida 33432

Re: <u>Emarketersamerica.org, Inc. v. Spews.org et al.</u>

Dear Mr. Felstein:

I write to confirm the substance of our two most recent telephone conversations.

On Thursday, September 4, 2003, we discussed your improper unilateral attempt to dismiss the case. You claimed to be unaware of Rule 41's requirement that you obtain either a Court order or the Defendants' approval in relation to the attempted voluntary dismissal. You also stated that you had not yet read the Motion To Dismiss and that you did not intend to read it, respond to it, or respond to the Defendants' discovery. I reiterated that the Defendants would not consent to any dismissal that did not include the payment of their attorneys' fees by EMA and/or you. I also reiterated that the Defendants expected you and EMA to comply with the Federal Rules of Civil Procedure and the Local Rules by responding properly and timely to the Motion To Dismiss and discovery requests. I also reiterated the Defendants' position that, as the lead director/founder/ spokesperson for EMA, you will be personally liable for any sanctions or judgments entered against EMA. You told me that there was "no fucking way" you would ever pay a penny to the Defendants.

On Thursday, September 11, 2003, we again spoke about the attempted unilateral dismissal of the lawsuit by EMA. I again reiterated that the Defendants require the payment of their attorneys' fees as a condition to their consent to the dismissal of EMA's Complaint. You told me that you still have not yet read the Defendants' Motion To Dismiss, but that you nonetheless continue to believe the claims set forth in EMA's Complaint to be meritorious. I reiterated that the Defendants expect EMA to timely respond to the Motion To Dismiss and the outstanding discovery. Finally, I represented that the Defendants' upcoming response to EMA's null attempt at dismissal would include a detailed breakdown of the Defendants' attorneys' fees, which I very roughly estimated as totaling $75,000.

If you wish to make an offer of case resolution that includes the payment of all or some significant portion of the Defendants' attorneys fees, I would welcome the opportunity to discuss this case further with you. In the meantime, I look forward to receiving EMA's response brief and discovery responses. Please note that, as this case continues, so, too, do the Defendants' attorneys' fees continue to grow.

Sincerely,

*Pete Well*

Paul F. Wellborn III

cc: Sam Danon

2



HUNTON & WILLIAMS LLP
1111 BRICKELL AVENUE
SUITE 2500
MIAMI, FLORIDA 33131-1802

TEL     305 • 810 • 2500
FAX     305 • 810 • 2460

SAMUEL A. DANON
DIRECT DIAL: 305-810-2510
EMAIL:  sdanon@hunton.com

FILE NO: 63781-2

June 12, 2003

**VIA FACSIMILE**

Mark E. Felstein, Esq.
Felstein & Associates, P.A.
555 South Federal Highway
Suite 450
Boca Raton, FL  33432

Re:     *Emarketersamerica.org, Inc. v. Spews.org, et al.*
        U.S.D.C. Southern District Case No. 03-80295

Dear Mark:

        Pursuant to Magistrate Judge Linnea R. Johnson's Pretrial Scheduling Order dated May
28, 2003, today is the deadline to agree upon a mediator.  We have not yet heard anything from
you in this regard, but propose Daniel Pearson as mediator in this matter.  Pease let me know if
this is acceptable to you, or if you have alternate names.

Sincerely,

Samuel A. Danon

**3**

# SUMMARY OF COSTS AND ATTORNEY FEES INCURRED BY THE DEFENDANTS AS OF SEPTEMBER 15, 2003

**(ALL of these costs and attorney fees were incurred AFTER the frivolous nature of the lawsuit was explained to Felstein on May 5, 2003 and demand was made for the dismissal of the lawsuit.)**

| Defendant | Total Costs and Fees Incurred |
|---|---|
| Spamhaus.org | $7,810.35 |
| Steve Linford | $7,810.35 |
| Alan Murphy | $7,810.35 |
| Susan Gunn | $7,810.35 |
| Steven J. Sobol | $7,810.35 |
| Clifton T. Sharp | $7,810.35 |
| Richard C. Tietjens | $7,810.35 |
| Adam Brower | $7,810.35 |
| Stephen Joseph Jared | $7,810.35 |

Total Fees And Costs (Cumulative - All Defendants)

| Firm | Total Attorney Fees | Total Expenses | Total Fees/Expenses |
|---|---|---|---|
| Wellborn & Butler | $63,825.00 | $96.64 | $63,921.64 |
| Hunton & Williams | $6,128.75 | $242.78 | $6,371.53 |
| Grand Total (as of September 15, 2003): | | | $70,293.17 |

**4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NUMBER:      03-80295 CIV – MIDDLEBROOKS/JOHNSON

EMARKETERSAMERICA.ORG, INC.,
A Florida Non Profit Corporation,

       Plaintiff,

vs.

SPEWS.ORG d/b/a THE HERMES GROUP, et al.,

       Defendants.
_____/

## WITHDRAWAL OF VOLUNTARY DISMISSAL WITH PREJUDICE

Plaintiff, EMARKETERSAMERICA.ORG, INC., a Florida Non Profit Corporation, by and

through its undersigned Counsel, hereby withdraws its Notice of Voluntary Dismissal with Prejudice

in the above styled action.

WHEREFORE, Plaintiff, EMARKETERSAMERICA.ORG, INC., has withdrawn its Notice

of Voluntary Dismissal with Prejudice.

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September, 2003, a true and correct copy of the
foregoing was sent as follows: via facsimile 305-810-1610 and Regular U.S. Mail to Samuel A.
Danon, Esq., Hunton Williams, LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131 and via
facsimile 1-404-815-9957 and Regular U.S. Mail to Paul F. Wellborn, III, Esq., Wellborn & Butler,
LLC, 1372 Peachtree Street, N.E., Suite 204, Atlanta, GA 30309.

FELSTEIN & ASSOCIATES, P.A.
Attorneys for eMarketersamerica.org, Inc.
555 South Federal Highway, Suite 450
Boca Raton, Florida 33432
(561) 367-7990 Phone; (561) 367-7980 Facsimile

BY _____
Mark E. Felstein, Esq.
FBN: 192139