UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NUMBER: 03-80295-CIV-MIDDLEBROOKS/JOHNSON

EMARKETERSAMERICA.ORG, INC.,
A Florida Non Profit Corporation,

    Plaintiff,
vs.

SPEWS.ORG et. al.,

    Defendants.
_____/

<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS FOR LACK OF STANDING, LACK OF SUBJECT MATTER JURISDICTION, LACK OF PERSONAL JURISDICTION, AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S REQUEST FOR AN ORDER GRANTING BY DEFAULT, OR IN THE ALTERNATIVE, DISMISSING THE CASE PURSUANT TO RULE 41(A)(2) AND DEFENDANTS' DEMAND FOR ATTORNEY FEES</u>

and

<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' REQUEST FOR ORDER GRANTING BY DEFAULT, OR IN THE ALTERNATIVE, DISMISSING THE CASE PURSUANT TO RULE 41 (A)(2) AND DEFENDANTS' DEMAND FOR ATTORNEY FEES</u>

Plaintiff, EMARKETERSAMERICA.ORG, INC., a Florida Non Profit Corporation, by and through its undersigned Counsel, hereby files the above-entitled Memoranda, and as grounds states as follows:

<u>No Lack of Standing</u>

1.    The Supreme Court of the United States in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 97 S. Ct. 2434, set forth the 3-part test for an association to have standing to bring suit on behalf of its members, and stated it has such standing



1

"when (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members." citing *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343. Pp. 2441-2442.

2. Here, EMARKETERSAMERICA.ORG, INC. ("EMA"), a Florida Non Profit Corporation, is a lawfully and duly registered Florida Non Profit Corporation whose members consist of lawfully and duly registered Corporations and individuals united for the specific and general purposes surrounding Internet marketing, including email marketing, and free speech concerns, including privacy rights.

3. The instant suit seeks equitable and legal relief, which would otherwise be affordable by this Court to its individual members as well as to its corporate members. There is an actual controversy cognizable to each of the members. There are no statutory or contractual bars to recovery had this suit been brought in the names of the individual members or the corporate members. Thus, the members of EMA would otherwise have standing to sue in their own right to protect their interest which are germane to the purposes of EMA (Internet marketing, including email marketing, and free speech concerns, including privacy rights).

4. In *Warth*, the Court held that "an association of construction firms could not seek damages for the profits and business lost by its members because 'whatever injury might have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof.' " *Brock*, 477 U.S. at 287 (quoting *Warth*, 422 U.S. at 515-516). By contrast, the Court in *Brock* held that a request for

  declaratory relief by an association on behalf of its members does not require the individual participation of its members where the "suit raises a pure question of law." *Brock,* 477 U.S. at 287. Here, neither the claims asserted nor the relief requested requires the participation in the instant suit of each of the individual members. The relief requested is injunctive and (per se) intentional privacy based torts.

5.  While Courts have denied associational standing for damages claims concerning contract matter sin the context of franchise claims where damages were sought, here although damages are sought as part of the remedy for injunctive relief and for per se tort violations, which because said injury was per se, general damages are assumed. Thus, these claims always meet the jurisdictional requirement.

6.  Further, the Supreme Court in *Brock,* recognized that "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Brock* at 275-276. Such is thee case here.

7.  Based on the foregoing, the 3-part test for an association to have standing to bring suit as set forth in *Hunt* has been met, and all claims to the contrary should be dismissed.

No Lack of Subject Matter Jurisdiction

8.  The Defendants have challenged that part of the Plaintiff's Complaint which is based upon Diversity Jurisdiction. As alleged in the instant complaint, this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332, (a) and (c), diversity of citizenship jurisdiction, which states impertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

 (1) citizens of different States;
 (2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

(c) For the purposes of this section and section 1441 of this title—

(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business;

9. Here, upon information and belief, at the time of the filing of the original Complaint all of the individual Defendants were citizens domiciled in different states, the two(2) corporate Defendants had their principal place of businesses in foreign countries, and the two (2) foreign individual Defendants were citizens of foreign countries. That information and belief at the time of the filing of the Complaint appears to have been correct.

10. Next, the Defendants complaint that the Plaintiff has impermissibly aggregated its claims to meet the jurisdictional requirement. The allegations in the Plaintiff's well pleaded Complaint are to be taken as true, and they contain a short and plain statement of the facts and prayer for relief. That said, the amount in controversy at the time of the filing of the Complaint was alleged to have been in excess of $75,000.00, exclusive of interest, attorney fees and costs for those claims where jurisdiction was invoked for a judgment for money damages. That being the case, the Plaintiff and its members have met the jurisdictional requirements.

11. The Defendant's Memorandum of Law incorrectly applies *Morrison v. Allstate Indemnity Company*, 228 F.3d. 1255 (5th Cir. 1967) to the facts of this case when it argues that "the

claims of <u>each</u> alleged–injured association member against <u>each</u> respective defendant must be considered separately for diversity purposes." That is <u>not</u> the law for an association matter, *Morrison* is a case decided in the context of a class action. However, even if this Court were to apply that case to the instant case, this Court has subject matter jurisdiction. However, *Morrison* does state "[f]or amount in controversy purposes, however, it is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated. *See* <u>Gilman, 104 F.3d at 1427</u>. The common fund approach is the approach to be taken in the instant matter, and accordingly no lack of subject matter exists.

No Lack of Personal Jurisdiction

12. Here, the Defendants did not file any pre-answer Rule 12 (b) motions. The Defendants filed an Answer along with Affirmative Defenses, one of which was:

> "FIRST DEFENSE This Court lacks personal jurisdiction over each of the Answering Defendants."

13. Procedurally, a Motion for Summary Judgment on the-above affirmative defense is the appropriate pre-trial procedural vehicle to resolve this affirmative defense. However, in as much as the Affirmative Defense itself is not well pled, the Defendants should be left with their statement of said Affirmative Defense (as quoted above) and the portion of their Memorandum of Law stricken.

14. The Defendants' Memorandum of Law regarding personal jurisdiction fails to recognize that interstate commerce is alleged to be affected by the Defendants conduct through the World Wide Web, and that this Federal Court has jurisdiction over these matters.

No Failure to State a Claim

15. The Defendants base their failure to state claim argument on several incorrect presuppositions:

> a. that there are only corporate members of EMA when in fact there are individual members, and
>
> b. Defendant, Spamhaus (and Spews, note, the "Answering Defendants" have not entered an appearance on behalf of Spews, but their counsel now makes claims on their behalf.), claim they are "Media Defendants" and are entitled to additional protections with regard to privacy claims.

That is simply not the case. Spamhaus.org and Spews.org are not authors or the media in any sense. They are both self-appointed police type organizations on the Internet. Additionally, this argument of the Defendants' is more in the line of an affirmative defense than an allegation sufficient to support a claim that the issues of fact and law are so well settled that even in the light most favorable to the non-moving party, the moving party is entitled to a pre-trial judgment.

### No Default

16. The matters presented for which a default was sought are now moot by the filing of the herein Memoranda.

17. Further, the Defendants state that the Plaintiff's Complaint was frivolous, but did file an Answer to it with this Court. The thrust of Defendants' Request for Order Granting Default, on in the Alternative, Dismissing the Case pursuant to Rule 41 (A)(2) and Defendants' Demand for Attorney Fees as well as the pleadings based thereon are to derive attorney fees from the undersigned. Referenced within said Defendants' Request is an initial conversation initiated by Paul F. Wellborn, III now admitted pro hac vice) by and between the undersigned. While the undersigned does not wish to engage in a

rendition of that telephone conversation or others before this Court, suffice to say what is represented in the Defendants' Request is <u>not</u> correct or accurate.

18. As support for the Defendant's representations in other correspondences since the filing of this matter, lets just say that the undersigned and Mr. Paul F. Wellborn, III, from Georgia do not appreciate the others position. That said, Mr. Wellborn, III, the self-titled legal 'Spam Hammer' has attached several newspaper and Internet articles in advance of his positions. The Federal Rules of Court and case law do not suggest that newspaper articles nor the journalists who author such articles in any substitute for legal testimony, at least not in Florida.[1]

## No 28 USC 1927 Claim

19. The Defendants have claimed that they are entitled to relief pursuant to 28 U.S.C. 1927, which states that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." There has been no multiplication of proceedings herein to warrant such a finding. In applying 28 U.S.C. 1927, *U.S. v. Ross*, 535 F.2d 346 (C.A.Ohio 1976) stated that "[s]ince the statute employs the unusual approach of requiring an attorney personally to pay costs instead of the customary one of placing the responsibility for them upon a litigant, it seems appropriate not to impose this

---

[1] However, as was told to the undersigned by Mr. Wellborn the same day, New York Newsday staff reported Mark Harrington quoted Mr. Wellborn in his article entitled "Anti-Spam Forces Forge Ahead in Court," on September 23, 2003, with regard to the undersigned and this matter, that Wellborn in an interview yesterday said, "I will chase him down [Mr. Felstein] like the hounds of -- to the end of the earth if necessary to collect all amounts he owes - one dollar at a time if necessary."

7

sanction for an unintended inconvenience to the court no matter how annoying it might be. Personal responsibility should, in this instance, flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court." Here, that is not the case, the undersigned filed this case, attended a Pretrial Scheduling Conference before Magistrate Johnson (and even agreed to allow Magistrate Johnson hear this matter, but the Defense counsel refused to agree). The undersigned believes that Defense counsel Wellborn refused to agree only because the undersigned was willing to agree.

20. Further, the *Ross* Court stated that "[w]e believe that the district court erred in assessing the cost of summoning the jury venire for another reason. Section 1927 refers to increased "costs" caused by an attorney's conduct before a federal court. Although there are few cases considering the definition of "costs" under this section, the Seventh Circuit has determined that: (T)he section does not deal with the question of the nature or amount of costs to be allowed, but authorizes imposition of otherwise allowable costs on counsel personally in place of the party for whom he appeared where the circumstances mentioned in the section have occurred. As succinctly put by another court, the section "merely authorizes the taxing of such excess of costs as arose from unreasonable and vexatious conduct of an attorney, to the attorney himself, as opposed to his client, and does not create any penalty in favor of the prevailing party, nor does it sanction the taxing of any additions over regular costs." *1507 Corp. v. Henderson*, 447 F.2d 540, 542 (7th Cir. 1971), quoting *In re Realty Associates Securities Corp.* 53 F.Supp. 1013 (E.D.N.Y.1943). (Emphasis supplied.) The Seventh Circuit affirmed the district court's determination that s 1927 did not

8

permit taxation of attorney's fees as part of the costs. Because s 1927 is penal in nature, we believe that it should be strictly construed, and we agree with the Seventh Circuit's determination that "costs" should be limited to taxable costs. Cf. *Lockett v. Hellenic Sea Transports, Ltd.,* 60 F.R.D. 469 (E.D.Pa.1973)." Moreover, not that such conduct exists in the instant matter, this section is not for negligent or careless actions.

WHEREFORE, Plaintiff, EMARKETERSAMERICA.ORG, INC., requests entry of an Order denying Defendants Motions in their entirety with prejudice, together with such other and further relief as this Court deems just, proper and equitable.

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October, 2003, a true and correct copy of the foregoing was sent as follows: via facsimile 305-810-1610 and Regular U.S. Mail to Samuel A. Danon, Esq., Hunton Williams, LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131 and via facsimile 1-404-815-9957 and Regular U.S. Mail to Paul F. Wellborn, III, Esq., Wellborn & Butler, LLC, 1372 Peachtree Street, N.E., Suite 204, Atlanta, GA 30309.

FELSTEIN & ASSOCIATES, P.A.
Attorneys for eMarketersAmerica.org, Inc.
555 South Federal Highway, Suite 450
Boca Raton, Florida 33432
(561) 367-7990 Phone
(561) 367-7980 Facsimile
mark@eMarketersAmerica.org

BY /s/ Mark E. Felstein
Mark E. Felstein, Esq.
FBN: 192139