UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-80295-CIV-MIDDLEBROOKS/JOHNSON

EMARKETERSAMERICA.ORG, INC.,

A Florida not-for-profit corporation,

        Plaintiff,

v.

SPEWS.ORG d/b/a THE HERMES GROUP;

SPAMHAUS.ORG d/b/a THE SPAMHAUS PROJECT;

CSL GMBH JOKER.COM;

STEVE LINFORD;

JULIAN LINFORD;

ALAN MURPHY;

SUSAN WILSON a/k/a SUSAN GUNN a/k/a SHIKSAA;

STEVEN J. SOBOL;

CLIFTON T. SHARP;

RICHARD C. TIETJENS a/k/a MORLEY DOTES;

ADAM BROWER; and

STEPHEN JOSEPH JARED a/k/a JOE JARED,

        Defendants.

_____/

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S RULE 41 MOTION TO DISMISS AND MEMORANDUM OF FACT AND LAW IN SUPPORT THEREOF

Defendants Spamhaus.org, Steve Linford, Alan Murphy, Susan Gunn, Steven J. Sobol, Clifton T. Sharp, Richard C. Tietjens, Adam Brower, and Stephen Joseph Jared (collectively the "Defendants") hereby reply (the "Reply Brief") to EMA/Felstein's untimely October 2, 2003 <u>Memorandum Of Law In Opposition To Motion To Dismiss For Lack Of Standing, Lack Of Subject Matter Jurisdiction, Lack Of Personal Jurisdiction And Failure To State A Claim Upon Which Relief May Be Granted And Memorandum Of Law In Opposition To Defendants' Request For Order Granting By Default, Or In The Alternative, Dismissing The Case Pursuant To Rule 41(a)(2) And Defendants' Demand For Attorney Fees And</u> *[sic]* <u>Memorandum Of Law In Opposition To Defendants' Request For Order Granting By Default, Or In The Alternative, Dismissing The Case Pursuant To Rule 41(a)(2) And Defendants' Demand For Attorney Fees</u> (EMA/Felstein's "Response Brief") in an abundance of caution, in case any portion of that untimely and unsupported Response Brief somehow survives the Defendants' contemporaneously-filed Motion To Strike and/or the Defendants' September 19, 2003 <u>Request For Order Granting By Default, Or In The Alternative, Dismissing The Case Pursuant To Rule 41(a)(2) And Defendants' Demand For Attorney Fees</u> (the Defendants' "Request For Order"). The Defendants also respond by this brief to EMA/Felstein's October 2, 2003 <u>Motion To Dismiss Pursuant To Rule 41</u> (the "Rule 41 Motion"). In reply to the EMA/Felstein Response Brief and in response to EMA/Felstein's Rule 41 Motion, the Defendants show as follows:

## OVERVIEW

In a desperate attempt to avoid legal liability for the bogus lawsuit he filed, Felstein has filed an untimely Response Brief reasserting the viability of EMA/Felstein's claims and a Rule 41 Motion asking that the Defendants be forced to bear their own attorney fees. In support of Felstein's contentions that the EMA/Felstein lawsuit is meritorious and that he has not contributed to the multiplication of a frivolous action, Felstein offers a number of ridiculous legal arguments, including (but not limited to) the following:

2

* By raising the defense of personal jurisdiction as an affirmative defense in their Answer, the Defendants actually waived their right to challenge personal jurisdiction; *(See Response Brief at ¶ 13);*

* The case-at-bar is not properly before this Court because the Defendants answered without asserting a counterclaim; *(See Rule 41 Motion at ¶ 1);*

* The Interstate Commerce Clause is a personal jurisdiction-related statute that grants personal jurisdiction over a defendant in any state if the subject-matter of the lawsuit involves interstate commerce; *(See Response Brief at ¶ 14);*

* Unsupported, unsworn factual allegations effectively rebut sworn testimony; *(See discussion at Defendants' Motion To Strike, Argument Section III);*

* Allegations of "per se" torts necessarily and automatically satisfy both the amount-in-controversy requirements of the diversity statute (28 U.S.C. § 1332) and associational standing requirements; *(See Response Brief at ¶ 4);*

* Injured parties whose individual claims do not meet the amount-in-controversy requirements of 28 U.S.C. § 1332 may band together, add parties until the sum total of all claims exceeds $75,000, and thereby satisfy the diversity statute; *(See Response Brief at ¶ 11);*

* 28 U.S.C. § 1927 allows the assessment of costs, but not attorney fees, against an attorney who violates it; *(See Response Brief at ¶¶ 19-20);* and

* Felstein cannot be held liable for the Defendants' attorney fees under 28 U.S.C. § 1927 because he "attended [the] Pretrial Scheduling Conference" and because he was willing to allow the referral of this case to Judge Johnson. *(See Response Brief at ¶ 19).*

## FACTS

The Defendants incorporate by reference those portions of their Request For Order and their Motion To Strike Plaintiff's Response Brief (which was filed contemporaneously with the present Reply) setting forth the underlying facts and the procedural history of the instant matter. *(See Request For Order, "Facts" Section; Motion To Strike, "Facts" Section ).*

## ARGUMENT

### I. THE EMA/FELSTEIN RESPONSE BRIEF IS AS FRIVOLOUS AS THE EMA/FELSTEIN COMPLAINT.

Even if one ignores the untimeliness of EMA/Felstein's Response Brief *(see Motion To Strike at Argument, Section I),* ignores the inadmissibility of Felstein's unsworn factual ramblings *(see id. at Section III),* ignores Felstein's failure to cite pertinent legal authorities *(see id. at Section IV),* and ignores the effect of EMA/Felstein's failure to respond to the Defendants' Requests For Admissions *(see id. at Section II),* the ultimate result – the dismissal of

EMA/Felstein's Complaint and the assessment against EMA/Felstein of the Defendants' costs and attorney fees – remains unchanged. EMA/Felstein's Response Brief is just as frivolous as was the EMA/Felstein Complaint. Indeed, the disjunct and illogical nature of the arguments set forth in the Response Brief make reply difficult or, in some cases, impossible. Nonetheless, to the extent that the Defendants are able to decipher what Felstein is trying to argue, they reply as follows to the Response Brief.

### A. Contrary To EMA/Felstein's Arguments At Paragraphs 1-7, EMA Lacks Standing.

EMA/Felstein argues in paragraphs 1-7 that EMA has standing to sue. Although EMA/Felstein quotes from several standing-related cases, none of the cited authority supports or even tends to support EMA/Felstein's standing arguments. The majority of this section of EMA/Felstein's brief is, in fact, gibberish (e.g., " . . . The relief requested is injunctive and (per se) intentional privacy based torts."). *(Response Brief at ¶ 4)*. Other portions of this section of EMA/Felstein's Response Brief seem to be a collection of random, legal-sounding phrases (e.g., " . . . although damages are sought as part of the remedy for injunctive relief and for per se tort violations, which because said injury was per se, general damages are assumed. Thus, these claims always meet the jurisdictional requirement."). *(Id.)*. Although the Defendants do not understand much of what EMA/Felstein attempts to argue in these paragraphs, it is clear that none of EMA/Felstein's discussion tends even in the slightest degree to rebut the incurable standing-related defects inherent in EMA/Felstein's Complaint. *(See Motion To Dismiss at Argument, Section I)*.

### B. Contrary To EMA/Felstein's Arguments At Paragraphs 8-11, This Court Lacks Subject Matter Jurisdiction.

EMA/Felstein argues in paragraphs 8-11 that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332 (the "diversity jurisdiction" statute). The only statement of any substance (albeit, erroneous substance) in this section of EMA/Felstein's brief appears in paragraph 11, where EMA/Felstein miscites Morrison v. Allstate Indemnity Co., 228 F.3d 1255 (5th Cir. 1967) and argues that, in an associational standing case, the claims of all association members can be aggregated for amount-in-controversy purposes.

The Defendants cite Morrison not as an associational standing case, but instead for its discussion of the general rules against claim aggregation in the diversity setting. As the Defendants explain in their Motion To Dismiss, the U.S. Supreme Court has made clear the fact

4

that associational standing exists <u>only</u> if, among other requirements, each member could sue individually in his own right.  See <u>Hunt v. Washington State Apple Advertising Comm'n</u>, 432 U.S. 333, 343, 97 S. Ct. 2434, 2441, 53 L. Ed.2d 383 (1977).  Since individual plaintiffs are not allowed to aggregate their claims with other plaintiffs for jurisdictional purposes (<u>see</u> <u>Morrison</u>), a federal court would lack jurisdiction over the claim of any given association member whose damages were less than $75,000.  In specific relation to Felstein's argument – that the claims of an association's members may be aggregated for jurisdictional purposes – the court held in <u>Ferris v. General Dynamics Corp.</u>, 645 F. Supp. 1354, 1363-64 (D. R.I. 1986) (cited in the Defendants' Motion to Dismiss at Argument, Section II) that such position "is a mirage" and explained:

> an abstract concept of "standing" confers neither jurisdiction nor a right to aggregate [an associational plaintiff's] members' claims to reach a jurisdictional threshold; if the law were otherwise, [the amount-in-controversy requirement] could facilely be undercut by the cosmetic expedient of forming a so-called "association" to embrace the individually insufficient claims of [the members] and agglomerating those claims to exceed the limit required for the amount in controversy.  Such a handy detour simply does not exist.

### C. <u>Contrary To EMA/Felstein's Arguments At Paragraphs 12-14, This Court Lacks Personal Jurisdiction Over The Defendants.</u>

In a pleading characterized by one frivolous statement after another, paragraphs 12-14 nonetheless stand out as especially outlandish.  These paragraphs set forth EMA/Felstein's two-prong theory of personal jurisdiction: (1) that the Defendants waived their personal jurisdiction defense by asserting it as an affirmative defense in their Answer rather than filing a pre-Answer motion and brief, and (2) that personal jurisdiction is in any event proper under the Interstate Commerce Clause.  There is no merit whatsoever to either of these positions.

#### 1. <u>The Filing Of An Answer That Includes The Affirmative Defense Of Personal Jurisdiction Effectively Preserves That Defense.</u>

In their initial responsive pleading (their Answer), the Defendants asserted the affirmative defense of "lack of personal jurisdiction." *(See Answer at First Affirmative Defense)*.  In their initial motion thereafter (their September 2, 2003 Motion To Dismiss), the Defendants reasserted the defense of personal jurisdiction and provided factual and legal citation in support thereof. *(Motion To Dismiss at Argument, Section III)*.  EMA/Felstein now argues that the Defendants waived their right to contest personal jurisdiction <u>because</u> they initially asserted that defense in their Answer.  This argument is, like the rest of Felstein's lawsuit, frivolous and wholly without

5

merit. See, e.g., Federal Rule of Civil Procedure 12(b); National Enquirer, Inc. v. News Group News, Ltd., 670 F. Supp. 962 (S.D. Fla. 1987) (as long as defendant raised the defense of personal jurisdiction in its answer, that defense was properly asserted and argued in the defendant's motion to dismiss filed eleven months later).

    2.   **The Interstate Commerce Clause Does Not Vest This Court With Personal Jurisdiction.**

The contention that the Interstate Commerce Clause vests this Court with *personal* jurisdiction over the Defendants is too ridiculous to warrant serious response.

  D.  **Contrary To EMA/Felstein's Arguments At Paragraphs 15, EMA/Felstein's Complaint Fails To State A Claim Upon Which Relief May Be Granted.**

In paragraph 15, Felstein "responds" to the Rule 12(b)(6)-related arguments in the Defendants' Motion To Dismiss with two unsupported statements – (1) that EMA's members include individuals as well as corporations, and (2) that neither Spamhaus nor SPEWS are media defendants. These allegations, even if accepted *arguendo* as true, respond only to the Defendants' Rule 12(b)(6)-related arguments regarding the unavailability of privacy and false-light causes to corporate plaintiffs and the required pre-lawsuit demand applicable to defamation claims against media defendants. EMA/Felstein failed to respond in any manner to the Defendants' Rule 12(b)(6) arguments regarding:

(1) EMA/Felstein's failure to state a cognizable claim for conversion; *(Motion To Dismiss at Argument, Section IV.A)*;

(2) EMA/Felstein's failure to state a cognizable claim for invasion of privacy on the basis of: (a) the inapplicability of that claim in relation to statements the truth of which the plaintiff denies, and/or (b) the inarguable public importance of the issue of spamming; *(Id. at Argument, Section IV.B.2 and 3)*;

(3) EMA/Felstein's failure to state a cognizable claim for tortious interference; *(Id. at Argument, Section IV.D)*; and/or

(4) EMA/Felstein's failure to state a cognizable claim for defamation on the basis of: (a) the impossibility of any pre-lawsuit EMA-related statements by the Defendants, (b) the Florida prohibition against associational standing defamation cases, and/or (c) the facial insufficiency (i.e., no statement as to time, place, content, etc.) of EMA/Felstein's defamation claim. *(Id. at Argument, Section IV.E)*.

Insofar as EMA/Felstein offered no argument whatsoever in opposition to these arguments, which are fatal to EMA/Felstein's Complaint, EMA/Felstein is deemed to have assented thereto.

### E. At Paragraphs 16-18, Felstein Lies To This Court In An Effort To Excuse His Refusal To File A Timely Response Brief.

In the Response Brief, Felstein crosses the line that separates shoddy lawyering from outright lying. In relation to the account set forth in the Defendants' Motion To Dismiss by Wellborn of his May 5, 2003 telephone conference with Felstein, Felstein claims that Wellborn has misrepresented the contents of that conversation. Felstein apparently asserts that Wellborn did not, in fact, explain the jurisdictional and standing defects inherent in the EMA/Felstein lawsuit and did not, in fact, offer EMA/Felstein the opportunity to avoid a claim for legal fees by dismissing the lawsuit. As an initial matter, Felstein has not asserted the inaccuracy of Wellborn's account of that conversation in a sworn (and thus admissible) form. Moreover, Felstein ignores the fact that Wellborn memorialized the pertinent aspects of the May 5, 2003 Wellborn/Felstein conversation (including the explanation of fatal defects in the EMA/Felstein lawsuit (the "Explanation") and the offer to accept a dismissal without demand for the payment of the Defendants' attorney fees (the "Offer")) by letter sent to Felstein via fax and U.S. Mail on May 6, 2003. *(See Motion To Dismiss at Exhibit A)*. In that May 6, 2003 letter, which Felstein does not dispute receiving, Wellborn wrote in pertinent part:

> As you know, I represent, among other defendants in the above-styled case, Alan Murphy and Adam Brower. I write to confirm the May 5, 2003 conversation that you and I had regarding this case. . . . During our conversation, you refused to disclose the identities of any members of Emarketersamerica.org, Inc. and told me that you intended to withhold that information "as long as possible." You vowed that you would force the defendants to seek judicial relief to obtain that information. You also represented that neither Eddy Marin nor any company with which he is affiliated have any relation whatsoever to Emarketersamerica.org, Inc. or this lawsuit. In response, I notified you of my clients' intention to seek frivolous litigation damages from all involved individuals (including you) and gave you the opportunity to dismiss to avoid such damages. . . . Among other fatal defects in the lawsuit, you have no colorable basis whatsoever to assert that Emarketersamerica.org, Inc. has standing to have filed the present matter. You likewise have no right to withhold the true identities of the members of that sham organization. Finally, if your clients (the "members") are, in fact, involved in the sending of unsolicited commercial e-mails ("spam") into networks that prohibit such e-mails (i.e., virtually every ISP in the United States), be aware that these members are violating various criminal and civil laws, including RICO, the Computer Fraud and Abuse Act, and trespass to chattel.

*(Motion to Dismiss at Exhibit A.8) (emphasis added)*. Furthermore, the Defendants' September 2, 2003 Motion To Dismiss contained both a sworn declaration from Wellborn attesting to the May 5, 2003 telephone conference and an authenticated copy of the May 6, 2003 letter. The

7

Defendants are at a loss to explain how Felstein can now claim that he did not receive the Explanation and Offer, <u>when they were in fact confirmed in writing to him the next day</u>.

### F. <u>At Paragraphs 19-20, Felstein Erroneously Argues That 28 U.S.C. § 1927 Does Not Contemplate The Award Of Attorney Fees.</u>

At paragraph 20 of the Response Brief, Felstein argues that 28 U.S.C. § 1927 permits the award of costs, but not attorney fees. *(See Response Brief at ¶ 20, pp. 8-9 (arguing that Section 1927 "[does] not permit taxation of attorney's fees as a part of the costs [awarded thereunder]")*. This argument is frivolous. *(See Request For Order at Argument, Section II.B)*.

## II. THE DISMISSAL OF EMA/FELSTEIN'S LAWSUIT PURSUANT RULE 41 SHOULD NECESSARILY INCLUDE THE IMPOSITION OF COSTS AND FEES AGAINST EMA AND FELSTEIN.

In the Rule 41 Motion, EMA/Felstein asks this Court to dismiss the EMA/Felstein lawsuit pursuant to F.R.C.P. 41. Other than a summary statement noting that the motion is made "pursuant to Rule 41," Felstein's motion contains <u>no legal argument or citation whatsoever</u>. *(See Rule 41 Motion at pp. 1-2)*. The motion is likewise devoid of any admissible factual allegations. *(Compare Motion To Strike at Section III (discussing the striking of inadmissible evidence) to EMA/Felstein's Rule 41 Motion (e.g., alleged pre-lawsuit investigation by EMA at ¶ 2, alleged inability of EMA to pursue lawsuit at ¶ 4, alleged insolvency of EMA at ¶ 5, alleged inability of EMA to litigate against Defendants' "large law firms,"[1] and alleged good faith efforts by EMA to resolve the case at ¶ 7))*. In addition to the fact that the Rule 41 Motion cites no admissible evidence and no relevant law, EMA/Felstein's contentions therein represent yet another wave of frivolous misrepresentations and outright lies. For example, given that EMA was formed only a few weeks before the lawsuit was filed, it is impossible that "[m]onths prior to the filing of [the lawsuit], the members of EMA and [Felstein] conducted and *[sic]* investigation of the potential claims and potential defendants." *(Rule 41 Motion at ¶ 1; Motion To Dismiss at Facts, Section I.A)*. Likewise, the insupportable nature of <u>every</u> legal argument advanced by Felstein belies his claims that the present litigation is meritorious and was undertaken in good faith.

As the Defendants explained in their Request For Order, Rule 41(a)(2) states that "an action shall not be dismissed at plaintiff's instance save upon order of the court <u>and upon such</u>

---

[1] The law firm of the Defendants' lead counsel (Wellborn & Butler, LLC) is, in fact, composed of two attorneys (only one of whom – Wellborn – has worked on this case) and a first-year associate not yet admitted to the State Bar. This is not a "large" firm by any standards.

8

terms and conditions as the court deems proper." (emphasis added). *(See Request For Order at Argument, Section II.A (citing supporting authority and explaining that the emphasized language prevents unfair voluntary dismissals and empowers the Court to require that the dismissing party pay the opposing parties' attorney fees).* Felstein's formation of EMA as a sham plaintiff, the frivolous nature of EMA/Felstein's Complaint, Response Brief, and Rule 41 Motion, and Felstein's continuing efforts to cost the Defendants as much money as possible all prove that the lawsuit was filed for a single purpose – to serve as a bad-faith financial deterrent to the nine Defendants and anyone else who dares to assist in the battle against spam. As the Defendants have already stated, to allow EMA/Felstein to file and maintain a bogus lawsuit and then hide behind a shell game of dismissals and withdrawals after forcing the Defendants to incur substantial legal fees would validate – indeed, would *reward* – EMA/Felstein's bad faith and incompetence. Justice and equity demand that this Court award the Defendants their reasonable costs and attorneys fees.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that any dismissal of EMA/Felstein's action include – whether pursuant to Rule 41, Local Rule 7.1.C, 28 U.S.C. § 1927, this Court's Pretrial Scheduling Order, and/or the inherent power of the Court – the award to Defendants of their reasonable costs and attorney fees from EMA and Felstein.

Respectfully submitted, this 16th day of October, 2003.

|  |  |
|---|---|
|  | **HUNTON & WILLIAMS, LLP** |
|  | _[signature]_ FLA BAR 0177989 |
|  | Samuel A. Danon |
|  | Florida Bar No. 892671 |
| Mellon Financial Center | |
| 1111 Brickell Avenue, Suite 2500 | |
| Miami, Florida 33131 | |
| Phone: (305) 810-2510 | |
| Fax: (305) 810-1610 | |
| E-mail: sdanon@hunton.com | |
|  | **WELLBORN & BUTLER, LLC** |
|  | _[signature]_ PA BAR 0177989 |
|  | Paul F. Wellborn, III _(admitted pro hac vice)_ |
|  | Georgia Bar No. 746720 |
| 1372 Peachtree St., N.E., Suite 204 | |
| Atlanta, GA 30309 | |
| Phone: (404) 815-9595 | |
| Fax: (404) 815-9957 | |
| E-mail: pete@wellbornlaw.com | Attorneys For Defendants Spamhaus.org, Steve Linford, Alan Murphy, Susan Gunn, Steven J. Sobol, Clifton T. Sharp, Richard C. Tietjens, Adam Brower, and Stephen Joseph Jared |

## CERTIFICATE OF SERVICE

This is to certify that I have this 10th day of October, 2003 served a copy of the foregoing DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND RESPONSE TO PLAINTIFF'S RULE 41 MOTION TO DISMISS AND MEMORANDUM OF FACT AND LAW IN SUPPORT THEREOF upon the below-listed counsel by hand at:

> Mark E. Felstein
> Felstein & Associates, P.A.
> 555 South Federal Highway, Suite 450
> Boca Raton, Florida 33432

HUNTON & WILLIAMS, LLP

_____
Samuel A. Danon
Florida Bar No. 892671

Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, Florida 33131
Phone: (305) 810-2510
Fax:   (305) 810-1610
E-mail: sdanon@hunton.com